UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN WANG,

      Plaintiff,

v.                                                               Civil Case No. 18-10347
                                                              Honorable Linda V. Parker

GENERAL MOTORS, LLC and
GM (CHINA) INVESTMENT CO., LTD.,

      Defendants.
_____/

## **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE (ECF NO. 16)**

      This Court presently has before it Plaintiff's motion to strike two declarations Defendant General Motors, LLC ("GM") attached to the reply brief it filed in support of a motion. A decision on Plaintiff's motion to strike rests on two questions: (1) whether matters outside the pleadings are properly considered in deciding GM's motion to dismiss and (2) if not, whether the declarations are properly submitted for other purposes. Plaintiff argues that the declarations should be stricken as improper submissions of evidence and arguments in a reply brief, but they are not. Instead, whether the Court should consider the declarations turns on the questions listed above.

## **Background**

      This lawsuit arises from the termination of Plaintiff's employment in July 2017, while working in Shanghai, China. In his Complaint, filed January 30, 2018,

Plaintiff alleges that his termination constituted age discrimination under the Age Discrimination in Employment Act ("ADEA") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") and race and/or ethnic discrimination in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the ELCRA.

On March 30, 2018, GM filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) or, in the alternative, under the doctrine of forum non conveniens.[1] (GM's Mot., ECF No. 11.) GM argues in the motion that, when he was terminated, Plaintiff worked exclusively for GM (China) Investment Co., Ltd. ("GMCIC") and never worked for GM. GM maintains that GMCIC does no business in the United States and was not controlled by GM. Because Plaintiff worked for a foreign employer in a foreign country, GM argues that his claims under the ADEA, Title VII, § 1981, and the ELCRA fail as a matter of law. GM further argues that Plaintiff's Title VII and ADEA claims conflict with China law mandating retirement of male employees at age sixty and thus must be dismissed under the "foreign laws" exception in those statutes. *See* 42 U.S.C. § 2000e-1(b); 29 U.S.C. § 623(f)(1). In support of this argument, GM attaches a certified translation of regulations promulgated in China providing: "When an employee reaches the statutory retirement age [sixty years of

---

[1] It does not appear that Plaintiff has yet served Defendant GM (China) Investment Co., Ltd., which he must accomplish under the Hague Convention.

2

age for men], his/her labor contract shall terminate." (ECF No. 11-6.) GM also provides the declaration of Robert Treme, GMCIC's Human Resources Director, to confirm China's laws regarding mandatory retirement and the independence of GMCIC from GM. (ECF No. 11-2.)

To the extent Plaintiff is asserting a failure-to-hire claim based on the alleged refusal to transfer or reassign him to a position in the United States after his termination, GM also argues that Plaintiff's Complaint fails to state facts plausibly supporting the required elements of the claim.

In response to GM's motion to dismiss, Plaintiff argues in part that the foreign laws exception is inapplicable because China law did not *require* termination of his employment. (Pl.'s Resp., ECF No. 14.) Plaintiff also contends that it would be inappropriate to decide this issue "at this early stage in the litigation[]" and "without further discovery and perhaps expert testimony on the issue." (*Id*. at 19-20, Pg ID 150-51.)

Plaintiff further argues that he did not work exclusively for GMCIC, as GMCIC employees had a "reporting relationship" to GM and Plaintiff travelled frequently to the United States and worked closely with GM. He further claims that substantial evidence exists to show that GMCIC is "controlled" by GM. Plaintiff maintains that Ms. Morgan and Mr. Treme were GM employees at the time of his termination. Plaintiff indicates that he has additional evidence not stated in his pleading regarding GM's control over GMCIC and seeks leave to

3

amend the Complaint if the Court believes that evidence should be stated therein. Plaintiff similarly argues that he was not required to state all his evidence regarding GM's refusal to transfer or reassign him to a position in the United States after his termination, but seeks leave to amend his pleading if the Court believes further facts should be alleged.

In reply, GM responds to Plaintiff's comment about the lack of expert testimony by submitting the declaration of Xu, Jianghui, an Attorney-at-Law admitted to practice in China who claims to be an expert in labor and employment law. (ECF No. 15-3.) GM also attaches a declaration to its reply brief from Ms. Zheng, GMCIC's Human Resources Business Partner. (ECF No. 15-4.) Ms. Zheng's declaration is provided to rebut Plaintiff's assertion in response to GM's motion that Ms. Morgan and Mr. Treme were GM employees.

Plaintiff's pending motion to strike followed.

## Plaintiff's Argument for Striking GM's Declarations

Plaintiff moves to strike Mr. Xu's and Ms. Zheng's declarations, arguing that their submissions violate Rule 6(c)(2) of the Federal Rules of Civil Procedure as evidence asserted for the first time in a reply brief. (ECF No. 16.) Alternatively, Plaintiff seeks the opportunity to engage in discovery, retain a rebuttal expert, and submit a supplemental brief. Plaintiff raises several challenges to Mr. Xu's declaration (e.g., his ability to opine as an expert on China law under Federal Rule of Evidence 702, his lack of authentic and supporting documentation,

and his provision of legal opinions). It is clear from Plaintiff's motion that he is not asserting these alleged defects to support his request to strike Mr. Xu's declaration, but rather to explain why he needs the opportunity for discovery, to submit a rebuttal expert, and to file a supplemental brief.

Rule 6(c)(2) of the Federal Rules of Civil Procedure requires that "[a]ny affidavit supporting a motion must be served with the motion." Under Sixth Circuit precedent, arguments raised for the first time in a reply brief generally are not considered. *See, e.g., Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*, 436 F.3d 662, 676 (6th Cir. 2006); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Nevertheless, "reply affidavits that respond only to the opposing party's briefs are properly filed with the reply brief." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002) (citations omitted); *Smith v. Burns Med. Ctr.*, 779 F.2d 1173, 1175 n.6 (6th Cir. 1986) (illustrating that a district court may consider attachments filed after a summary judgment motion is submitted where a defendant seeks to address new arguments presented in the plaintiff's response). Similarly, an argument raised for the first time in a reply brief that merely responds to arguments made in the opposing party's response brief are not improper. *See Scottsdale*, 513 F.3d at 553 (explaining that a reply brief is the opportunity to respond to arguments made in the opposing party's response brief); *see also Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1457 (E.D. Wis. 1993), *aff'd* 41 F.3d 1510 (7th Cir. 1994) ("[W]here the reply affidavit merely responds to matters

5

placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers—both briefs and affidavits—may properly address those issues.").

GM submitted Mr. Xu's and Ms. Zheng's declarations to address arguments raised by Plaintiff in opposition to GM's motion to dismiss. GM does not raise new arguments in support of dismissing Plaintiff's Complaint in its reply brief. As such, the timing of the declarations' submissions is not a basis for striking them. The Court, therefore, is denying Plaintiff's motion to strike the declarations based on Rule 6(c)(2). Nevertheless, as discussed *infra*, the Court finds another reason to strike Ms. Zheng's declaration.

## Discussion

Motions to dismiss for lack of subject matter jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(1). "Rule 12(b)(1) motions to dismiss for lack of jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). GM states in its motion that it is asserting a factual challenge to the existence of subject matter jurisdiction. (*See* GM's Br. in Supp. of Mot. at 4, ECF No. 11 at Pg ID 52.)

When a factual attack, also known as a "speaking motion," raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods.*,

491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id.* Nevertheless, GM's challenges do not in fact attack subject matter jurisdiction.

GM asserts that subject matter is lacking because "the anti-discrimination laws of this country do not apply to Plaintiff[.]" (GM's Br. in Supp. of Mot. at 1, ECF No. 11 at Pg ID 49.) The Court surmises from GM's motion that it believes those laws do not apply to Plaintiff because he was employed by GMCIC, which GM asserts is a foreign entity not controlled by a United States employer. (*See id.* at 3-4, ECF No. 11 at Pg ID 52-53.) In stating the standard for a Rule 12(b)(1) motion, GM cites two cases in which the district courts dismissed the plaintiffs' claims "for lack of subject matter jurisdiction" because their employers were foreign entities, not controlled by an American company. (*See id.*, citing *Celmer v. Livingston Int'l, Inc.*, No. 12-cv-00539, 2013 WL 951530 (W.D.N.Y. Mar. 12, 2013); *Middlebrooks v. Teva Pharm. USA, Inc.*, No. 17-00412 (E.D. Pa. Feb. 5, 2018).) This Court believes both decisions were inappropriately categorized as Rule 12(b)(1) dismissals, as the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503 (2006), makes clear.

The Supreme Court observed in *Arbaugh* that there is a distinction between "two sometimes confused or conflated concepts: federal-court 'subject-matter'

7

jurisdiction over a controversy; and the essential ingredients of a federal claim for relief." *Arbaugh*, 546 U.S. at 503. The Court remarked:

> "Jurisdiction," this Court has observed, "is a word of many, too many, meanings." *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 90 … (1998) (internal quotation marks omitted). This Court, no less than other courts, has sometimes been profligate in its use of the term. …
>
> * * *
>
> On the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous. "Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination." 2 J. Moore et al., Moore's Federal Practice § 12.30[1], p. 12-36.1 (3d ed. 2005) …Judicial opinions, the Second Circuit incisively observed, "often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Da Silva [v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000)]. We have described such unrefined dispositions as "drive-by jurisdictional rulings" that should be accorded "no precedential effect" on the question whether the federal court had authority to adjudicate the claim in suit. *Steel Co.*, 523 U.S. at 91 ….

*Arbaugh*, 546 U.S. at 510-11. The *Arbaugh* Court identified several "[c]ases of this genre", including, significantly here, its decision in *EEOC v. Arabian American Oil Co.*, 499 U.S. 244 (1991), where the Court affirmed the judgment of the courts below "placed under a lack of subject-matter jurisdiction label" that Title VII, as then written, did not apply to a suit by a United States employee working abroad for a United States employer. *Arbaugh*, 546 U.S. at 512-13.

8

The issue in *Arbaugh* was whether the employee-numerosity requirement for establishing a defendant's status as an "employer" for purposes of Title VII was an element of the plaintiff's claim for relief or a jurisdictional requirement. *Id*. at 503. The Court held that the numerical threshold does not circumscribe federal-court subject-matter jurisdiction, but instead relates to the substantive adequacy of the plaintiff's claim. The Court created a "bright line" rule to determine whether a requirement is jurisdictional:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. … But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id*. at 515-16 (internal footnote and citation omitted).

Applying this rule, the Supreme Court found nothing in Title VII's jurisdictional provisions specifying any threshold ingredient and noted that the numerosity requirement appeared in a separate provision that "'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'" *Id*. at 515 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). The Court therefore concluded that the numerosity requirement is an element of a plaintiff's claim for relief, not a jurisdictional issue. *Id*. at 516. The Sixth Circuit has applied *Arbaugh*'s bright-line rule to conclude that the administrative exhaustion requirement in Title VII and the ADEA also is not a jurisdictional

9

requirement. *Adamov v. U.S. Bank Nat'l Ass'n*, 726 F.3d 851, 856 (2013); *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 401-02 (2008). Numerous courts applying *Arbaugh* have concluded that a Rule 12(b)(1) motion is not the proper mechanism to bring a defense regarding one's status as an "employer" under Title VII or the ADEA. *See, e.g., Kology v. My Space NYC Corp.*, 177 F. Supp. 3d 778, 780 (E.D.N.Y. 2016) (citing cases); *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 600 (D. Md. 2014) (citing cases); *Kaiser v. Trofholz Tech., Inc.*, 935 F. Supp. 2d 1286, 1292 (M.D. Ala. 2013) (citing cases); *Harris v. Attorney Gen. of the United States*, 657 F. Supp. 2d 1, 8 (D.D.C. 2009).

Applying *Arbuagh*'s rule here leads this Court to conclude that the question of whether GM controlled GMCIC is nonjurisdictional. The ADEA's provision prohibiting discrimination by a foreign corporation controlled by American employers and the statute's definition of "employer," 29 U.S.C. §§ 623(h), 630(b), do not appear in the section of the statute conferring jurisdiction. *See* 29 U.S.C. § 626(c). The same is true for Title VII. *See* 42 U.S.C. §§ 2000e, 2000e-1(c)(1), 2000e-5. As a result, the standards applicable to a Rule 12(b)(6) motion, rather than a Rule 12(b)(1) motion, govern GM's challenge to Plaintiff's claims based on its assertion that it did not control GMCIC. Courts generally are precluded from considering matters outside the pleadings in deciding such a motion, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*,

866 F.2d 172, 175 (6th Cir. 1989)), and must accept the factual allegations in the plaintiff's complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Ms. Zheng's declaration therefore must be stricken, as it attempts to introduce facts relevant only to the issue of GM's control over GMCIC. In comparison, GM submits Mr. Xu's declaration only to aid the Court in deciding an issue of law: Whether compliance with the ADEA and Title VII would violate China law allegedly mandating the termination of a male employee at age sixty. *See* 29 U.S.C. § 623(f)(1) (providing that it is not unlawful to engage in age discrimination as prohibited under § 623(a), (b), (c), or (e) "where such practices involve an employee in a workplace in a foreign country, and compliance with such subsections would cause such employer, or a corporation controlled by such employer, to violate the laws of the country in which such workplace is located[.]"). The Federal Rules of Civil Procedure allow courts to consider a broad spectrum of materials to determine an issue of foreign law, even when ruling on a motion to dismiss. *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."); *Id.*, Commentary ("Taking submissions and even testimony under Rule 44.1 does not run afoul of the traditional limits on what judges may consider when resolving pleadings motions because the purpose of considering these extrinsic materials is not to identify fact matters but rather to determine the content and meaning of the

law, which under Rule 44.1 is a question of law for the court."). The Court therefore is denying Plaintiff's motion to strike Mr. Xu's declaration.

The Court concludes, however, that Plaintiff should have the opportunity to respond to Mr. Xu's declaration, at least to present his own expert's opinion regarding China law. But, the Court does not believe that discovery should be permitted to enable Plaintiff to challenge the qualifications or opinions of Mr. Xu. There are three reasons why the Court finds discovery unnecessary.

First, "[i]t is settled law that the sparring concerning preliminary issues should not be permitted to degenerate into a full-blown trial on the merits." *Base Metal Trading S.A. v. Russian Aluminum*, No. 00 CIV 9627, 2002 WL 987257, at *3 (S.D.N.Y. May 14, 2002). Second, "it is not the credibility of the experts [on foreign law] that is at issue, it is the persuasive force of the opinions they expressed." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 92 (2d Cir. 1998). Finally, the Court intends to conduct its own independent research to interpret China's relevant laws, using sources less likely to have the slant or "adversary spin" of the parties' retained experts. *See Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 620 (7th Cir. 2010) (criticizing the use of expert declarations or testimony to determine the meaning of foreign law where objective, English-language descriptions of the law are readily available, commenting that "[n]o federal judge would admit 'expert' declarations about the meaning of Louisiana law in a commercial case."); *Id.*, at 631 (Posner, J., concurring)

("writ[ing] separately merely to express emphatic support for, and modestly to amplify, the court's criticism of a common and authorized but unsound judicial practice. That is the practice of trying to establish the meaning of a law of a foreign country by testimony or affidavits or expert witnesses …"). Such resources include accepted (or official) translations of the relevant statutes and cases and secondary literature, such as treatises, and scholarly commentary.[2] The Court will use those resources to assess the credibility of the parties' experts. As such, it encourages the parties to supplement the record (in the time-frame set forth below) with citations and copies of additional materials they believe will assist the Court in its research.

## Conclusion

To summarize, the Court is **GRANTING IN PART AND DENYING IN PART** Plaintiff's motion to strike GM's declarations (ECF No. 16) in that it is striking Ms. Zheng's declaration as it is evidence that may not be properly considered in deciding the factual issue of whether GM controlled GMCIC. The Court is not striking Mr. Xu's declaration, but will grant Plaintiff's request for the opportunity to retain and submit his own expert's opinion relevant to the meaning

---

[2] As one secondary source has advised: "Each side should submit their independent translations [of foreign statutes and cases], if for no other reason than the meaning of words depends upon the values and culture of the nation employing those words." Ved P. Nanda, et al, 3 Litigation of Int'l Disputes in U.S. Courts § 18:11 (April 2018).

of China law.  If Plaintiff decides to submit the opinion of an expert on foreign law, he must do so within **forty-five (45) day**s of this Opinion and Order.

By that deadline, the parties may also submit additional resources they believe will aid the Court in ascertaining the meaning of the relevant foreign law.

**IT IS SO ORDERED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: September 20, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 20, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury  
Case Manager