UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN WANG,

     Plaintiff,

                                    Civil Case No. 18-10347
v.                                 Honorable Linda V. Parker

GENERAL MOTORS, LLC and
GM (CHINA) INVESTMENT CO., LTD.,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GENERAL MOTORS, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) OR, ALTERNATIVELY, UNDER THE DOCTRINE OF FORUM NON CONVENIENS

On January 30, 2018, Plaintiff filed this lawsuit against Defendants asserting

the following claims: (I) age discrimination in violation of the federal Age

Discrimination and Employment Act ("ADEA"); (II) age discrimination in

violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"); (III) race and

ethnic discrimination in violation of 42 U.S.C. § 1981; (IV) race and national

origin discrimination in violation of Title VII of the Civil Rights Act of 1964

("Title VII"); and (V) race and national origin discrimination under the ELCRA.

Defendants are General Motors, LLC ("GM") and GM (China) Investment Co.,

Ltd. ("GMCIC"). The matter is presently before the Court on GM's motion to

dismiss for failure to state a claim or, alternatively, under the forum non conveniens doctrine. (ECF No. 11.) The motion has been fully briefed (ECF Nos. 14, 15.) GM and Plaintiff also filed supplemental briefs addressing the law of the People's Republic of China, which is relevant to arguments raised by GM. (ECF Nos. 22, 24-27.) Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.    Applicable Standard of Review

In its motion, GM states that it is seeking dismissal pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. This Court previously addressed whether GM's motion is properly considered under Rule 12(b)(1) in an opinion and order issued on September 20, 2018. (ECF No. 21.) As the Court explained there, GM's challenges to Plaintiff's claims are not in fact challenges to the existence of subject matter jurisdiction. (*Id*. at Pg ID 406-09.) Rather, they are challenges to Plaintiff's ability to state a claim upon which relief may be granted. Accordingly, the standards applicable to a Rule 12(b)(6) motion, rather than a Rule 12(b)(1) motion, govern GM's motion.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Under this notice pleading standard, a complaint need not contain

"detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668.  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Further, as stated in this Court's September 20, 2018 decision, "[t]he Federal Rules of Civil Procedure allow courts to consider a broad spectrum of materials to determine an issue of foreign law, even when ruling on a motion to dismiss." (ECF No. 21 at Pg ID 410, citing Fed. R. Civ. P. 44.1.)

## II. Factual and Procedural Background

Plaintiff was born in China on July 3, 1957. (Compl. ¶¶ 7, 8, ECF No. 1 at Pg ID 2.) He became a naturalized United States citizen in 1999, and currently maintains only U.S. citizenship. (*Id*. ¶ 8, Pg ID 2.)

In February 1989, Plaintiff began working for GM in Canada. (*Id*. ¶ 9, Pg ID 3.) On or about July 1, 2009, GM transferred Plaintiff to a new job assignment at GMCIC as Senior Manager for Automotive Performance, Test and Validation in the Engineering Laboratories Department. (*Id*. ¶ 10, Pg ID 3.) The position was in Shanghai, China. (*Id*.) As a United States citizen, Plaintiff was required to have a work visa and resident permit to work in China. (*Id*. ¶ 11, Pg ID 3.)

On or about August 1, 2015, Charon Morgan became Director of Engineering at GMCIC and, in that capacity, was Plaintiff's immediate supervisor. (*Id*. ¶ 12, Pg ID 3.) Plaintiff believes that Ms. Morgan's supervisor was Tobias[1] Suenner, GMCIC's Vice President for Vehicle Engineering, who in turn reported

---

[1] Plaintiff refers to this individual as "Toblas" Suenner in the Complaint; however, documentation submitted to the Court indicates that the correct name is "Tobias." (*See, e.g.,* Pl.'s Resp. Ex. 4, ECF No. 14-5 at Pg ID 189).

to Kenneth L. Kelzer, who worked in the United States as GM's Vice President of Global Vehicle Components and Subsystems.  (*Id*. ¶ 13, Pg ID 3.)

On or about January 24, 2017, Ms. Morgan and Grace Zheng, GMCIC's Human Resources Manager, informed Plaintiff that he was going to be mandatorily retired on July 3, 2017, when he turned sixty years-old.  (*Id*. ¶ 15, Pg ID 3.) Plaintiff objected, noting that David Reeck, a colleague who was transferred to GMCIC around the same time as Plaintiff, worked in China for GMCIC until he was sixty-five years-old.  (*Id*. ¶ 16, Pg ID 4.)  Plaintiff believes Mr. Reeck, who is Caucasian, is a United States Citizen and not of Chinese national origin.  (*Id*. ¶ 17, Pg ID 4.)  At a subsequent meeting with Ms. Morgan on February 17, 2017, Plaintiff tried to reverse the decision to mandatorily retire him.  (*Id*. ¶ 18, Pg ID 4.) In response, Ms. Morgan analogized Plaintiff's situation to Kevin Wang, a locally hired engineer manager who was a Chinese citizen.  (*Id*. ¶ 19, Pg ID 4.)

On February 23, 2017, Plaintiff sent Ms. Morgan an email, stating that the decision to mandatorily retire him at age sixty contradicted a company memorandum he became aware of in 2009, when he transitioned to his job position in China.  (*Id*. ¶ 20, Pg ID 4.)  Entitled "Retirement Age" with a GM logo heading and an effective date of April 1, 2000, the memo reads in relevant part:

### 3.0    PROVISION

3.1     The retirement age shall be 55 years for female employee [sic], and 60 years for male employee [sic].  The retirement age will change subject to government regulations.

3.2     The company may, at its discretion, continue the employment of an employee on a year-to-year basis up to the age of 65.  Continued employment will be subject to the employee's job performance, an annual medical examination and government regulation.

(Compl. ¶ 21, ECF No. 1 at Pg ID 5, emphasis removed.)  Ms. Morgan responded to Plaintiff's email on February 24, 2017, "clarify[ing] that there's no business needs to extend your employment after your legal retirement age in China which is 60 years old according to applicable China law."  (*Id*. ¶ 22, Pg ID 5.)

In an email to Ms. Morgan and Ms. Zheng on March 13, 2017, Plaintiff disputed Ms. Morgan's claim that there was no business need to retain him, pointing out that there was a posting for Plaintiff's same and/or similar position already on "GM Global Internal Jobs."  (*Id*. ¶ 24, Pg ID 5.)  The following day, Ms. Zheng responded, asserting that "business need" refers to the continuation of employment of the employee, not the job position.  (*Id*. ¶ 26, Pg ID 6.)

In his March 13, 2017 email to Ms. Morgan and Ms. Zheng, Plaintiff also asked to be transferred back to the United States if he could not continue working in China.  (*Id*. ¶ 25, Pg ID 5.)  Plaintiff made several other contacts with GM, attempting to obtain positions in the United States.  He was unable to secure a position, however.  (*Id*.)

On May 16, 2017, Ms. Morgan and Ron Fraser authored a mass email using the GM logo announcing that Plaintiff "will retire after 28 years of service." (*Id.* ¶ 27, Pg ID 6.) The email also announced that Gregory Schone had been appointed as the new manager of GM China Engineering Laboratories and would be relocating to Shanghai, China. (*Id.* ¶ 28, Pg ID 6.) Plaintiff alleges that Mr. Schone is a substantially younger Caucasian who had been working for GM in the United States. (*Id.*)

On July 1, 2017, Plaintiff was involuntarily retired. (*Id.* ¶ 29, Pg ID 6.) He thereafter returned to his home in Clarkston, Michigan, and filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶¶ 1, 31, Pg ID 2, 6.) The EEOC issued a right-to-sue letter on January 17, 2018. (*Id.*) As indicated, Plaintiff initiated this lawsuit a short time later, on January 30, 2018.

## III.    GM's Arguments for Rule 12(b)(6) Dismissal and Analysis

### A.    The Relationship Between GM and GMCIC

GM contends that GMCIC is a foreign company, which GM does not control. Many of GM's arguments in support of its motion to dismiss are dependent on this assertion and thus the Court is addressing it first.

The ADEA and Title VII list four factors relevant to determining whether a United States corporation controls a foreign entity: "(A) the interrelation of

operations; (B) the common management; (C) the centralized control of labor relations; and (D) the common ownership or financial control, of the employer and the corporation." 42 U.S.C. § 2000e-1(c)(3); 29 U.S.C. § 623(h)(3). These are the same factors the Sixth Circuit and other Circuit Courts employ in the "single employer doctrine" to decide whether two entities should be regarded as a single employer subject to joint liability for employment-related acts. *See, e.g., Ambruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir. 1983), abrogated on other grounds in *Arbuagh v. Y & H Corp.*, 546 U.S. 500 (2006); *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). The four factors are flexible and no one factor is determinative. *Ambruster*, 711 F.2d at 1337-38; *Murray*, 74 F.3d at 404.

As an initial matter, GM relies on matters outside the pleadings to support its claim that it and GMCIC are independent entities and do not constitute a single employer. However, as outlined in the previous section, the Court may not consider such evidence to decide GM's Rule 12(b)(6) motion. GM nevertheless argues that Plaintiff fails to plead sufficient facts to plausibly support his allegation that GM controls GMCIC. In fact, in the paragraph of his Complaint asserting that GM controls GMCIC, Plaintiff simply recites the four factors set forth above. (Compl. ¶ 36, ECF No. 1 at Pg ID 7, citing 29 U.S.C. § 623(h)(3)); *see also* 42 U.S.C. § 2000e-1(c)(3). This is insufficient to plead a claim. *See Iqbal*, 556 U.S.

at 678 (indicating that "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient to state a claim).

In response to GM's motion, Plaintiff contends that he should be allowed to conduct discovery to develop evidence demonstrating the connectedness of GM and GMCIC. Plaintiff submits an affidavit from his attorney, David Kotzian, attesting to the need for discovery. (*See* Pl.'s Resp. Ex. 3, ECF No. 14-4 at Pg ID 185.) Yet, Plaintiff also states that he already possesses sufficient facts to state a plausible claim regarding GM's control of GMCIC if the Court were to grant him leave to amend his Complaint. Plaintiff sets forth some of those facts in his response brief. Plaintiff also contends that GM used carefully selected language and omitted key facts in the declarations submitted in its support of its motion which are therefore misleading as to GM's role in GMCIC.

For example, Plaintiff points to Robert Theme's statement in his declaration that he is the Human Resources Director of GMCIC in China. Plaintiff notes that Mr. Theme never states whether he is a GM or GMCIC employee. Instead, Mr. Theme represents that he is "on assignment as an International Service Personnel ('ISP') in China." (GM's Mot. Ex. 1 ¶ 2, ECF No. 11-2 at Pg ID 77.) Plaintiff asserts that most or all of the senior managers at GMCIC are ISPs who are temporarily assigned to GMCIC while remaining GM employees.

Plaintiff also points to the official press release announcing Ms. Morgan's appointment to GMCIC in August 2015, which clearly identifies GM as her employer. (Pl.'s Resp. Ex. 11, ECF No. 14-12 at Pg ID 222.) According to the announcement, Ms. Morgan was succeeding "Matt Crossley, who will officially retire *from GM* on September 1." (*Id.*, emphasis added.) Plaintiff further relies on GM's organizational charts, which show that Mr. Treme and Ms. Morgan report directly or indirectly to GM employees.[2] (*Id.* Exs. 4, 5, ECF Nos. 14-5, 14-6.)

Plaintiff further points out that Matt Tsien, the President of GMCIC, also holds the title of Executive Vice President of GM. (Pl.'s Resp. Ex. 12, ECF No. 14-13 at Pg ID 225.) Moreover, Mr. Tsien reports to Mary Barra, GM's Chairman and CEO. (*Id.*) Mr. Tsien signed a "Certificate of Recognition" on May 6, 2014, acknowledging Plaintiff's "25 years of loyal and dedicated service to *General Motors.*" (Pl.'s Resp. Ex. 14, ECF No. 14-5 at Pg ID 231, emphasis added.) Plaintiff had not reached that milestone solely at GMCIC or GM.

In addition, Plaintiff argues that GM uses the term "GM" interchangeably to refer to both the China and United States operations when it suits it, but then

---

[2] The GM organizational charts Plaintiff submits reflect that Mr. Treme reports to John Quattrone, Senior Vice President, Global Human Resources for GM. (Pl.'s Resp. Ex. 5, ECF No. 14-6 at Pg ID 199.) Those charts reflect that Ms. Morgan reports to Tobias Suenner, GMCIC's Vice President for Vehicle Engineering, who in turn reports to Kenneth L. Kelzer, GM's Vice President of Global Vehicle Components and Subsystems in the United States. (*Id.* Ex. 4, ECF No. 14-5 Pg ID 189-90.)

claims they are entirely distinct when doing so is beneficial.  Plaintiff points to the letter offering him the position in China, which bears the "GM" logo with a reference to the "GM China Group."  (GM's Mot., Ex. B, ECF No. 11-2 at Pg ID 87.)  The letter identifies Plaintiff's "corporate GM employee level" in the new position and states: "General Motors is the world's largest automotive manufacturer with aggressive growth plans for China."  (*Id*.)  According to Plaintiff, when he was transferred to China, his move was handled directly by two GM managers from the United States.  (Pl.'s Aff. ¶ 8, ECF No. 14-3 at Pg ID 176.)

The GM logo was also at the top of the May 16, 2017 announcement of Plaintiff's retirement "after 28 years of service", which was signed by Ms. Morgan and Ron Fraser, GM's Director of Infotainment, Telematics & Displays Validation.  (Pl.'s Resp. Ex. 9, ECF No. 14-10 at Pg ID 216.)  Mr. Fraser works for GM in Detroit, Michigan.  (Pl.'s Resp. Br. at 14, ECF No. 14 at Pg ID 145.)  The email announcing Plaintiff's retirement further stated that Gregory Schone had been appointed as the new Manager, GMCIC Engineering Laboratories and would be relocating to Shanghai, China.  (*Id*. Ex. 9, ECF No. 14-10 at Pg ID 216.)  Plaintiff indicates that Mr. Schone had been working at GM in Warren, Michigan.  (Pl.'s Aff. ¶ 8, ECF No. 14-3 at Pg ID 176.)  The Court also takes note of the fact that the email addresses for Plaintiff and the above-identified individuals—whether they

worked at GM or GMCIC—all are at "gm.com." (*See, e.g.,* Pl.'s Resp. Exs. 8, 9,
ECF Nos. 14-9 at Pg ID 209, 14-10 at Pg ID 215-16.)

The Court finds that Plaintiff presents sufficient facts in response to GM's
motion to plausibly support his assertion that GM controls GMCIC and survive
GM's Rule 12(b)(6) motion. In other words, Plaintiff demonstrates that, if allowed
to amend his Complaint (as he requests in response to GM's motion), he could
state facts to support the four control factors set forth already in his current
pleading.[3] Notably, all of the cases GM cites in its reply brief to argue that
Plaintiff's evidence is insufficient were decided on summary judgment or
following a trial. (*See* GM's Reply Br. at 3-4, ECF No. 15 at Pg ID 253-54.)
Thus, for purposes of evaluating GM's Rule 12(b)(6) motion, the Court is
accepting as true Plaintiff's assertion that GM and GMCIC are a single employer.[4]

## B. Transfer and/or Rehire Claim

In his Complaint, Plaintiff alleges that he requested to "be transferred back
to the United States if he was not allowed to continue to work in China" and "made

---

[3] The Court notes that, despite GM's assertion to the contrary, Plaintiff's
Complaint does include some factual allegations supporting his control assertion,
although he does not expressly connect those facts to the four relevant factors.
Some of those facts are included here in Section II.

[4] The Court therefore is rejecting GM's argument as a basis for dismissal of
Plaintiff's Title VII and ADEA claims that Plaintiff was employed by a foreign
company not controlled by a United States company. (*See* GM's Br. in Supp. of
Mot. at 8-11, ECF No. 11 at Pg ID 56-59.)

several other contacts with GM in an effort to obtain a position back in the United States, but he was denied a transfer."  (Compl. ¶ 25, ECF no. 1 at Pg ID 5-6.) Plaintiff asserts that this conduct—as well as the decision to involuntarily retire him at age sixty—violated the ADEA, the ELCRA, § 1981, and Title VII.  (*Id*. ¶¶ 37, 44, 49, 55, Pg ID 8-11.)  GM argues in its motion to dismiss that Plaintiff's factual allegations are insufficient to state a plausible failure-to-hire claim. Specifically, GM contends that Plaintiff pleads, in a conclusory manner, that he was denied a "transfer" or "reassignment" based on the protected characteristics of age, national origin, and race.

In response to GM's motion, Plaintiff sets forth further details regarding his efforts to secure a position with GM in the United States after he was involuntarily retired from his position in China.  (*See* Pl.'s Resp. Br. at 6, ECF No. 14 at Pg ID 137.)  He already asserts in his Complaint that those employment decisions were based on unlawful reasons (i.e., his age, national origin, and/or race).  Plaintiff also presents facts in his Complaint suggesting that his position in China was wrongfully terminated based on his race, age, and/or national origin.  If GM controls GMCIC and thus that termination position and its unlawful basis can be imputed to GM, the Court believes Plaintiff sets forth sufficient facts to state a plausible unlawful hire or transfer claim.

C.     42 U.S.C. § 1981

GM argues that Plaintiff's § 1981 claim should be dismissed because the statute does not protect individuals employed outside the territory of the United States. In support, GM cites two district court cases: *Theus v. Pioneer Hi-Bred International, Inc.*, 738 F. Supp. 1252 (S.D. Iowa 1990) and *de Lazzari Barbosa v. Merck & Co.*, No. 01-cv-2235, 2002 WL 32348281 (E.D. Pa. Mar. 11, 2002) (unpublished).

In response, Plaintiff argues that § 1981 applies to his claim that Defendants denied him employment or the opportunity to transfer to a position in the United States based upon his age, race, and/or ethnicity. Plaintiff further argues that aside from the Second Circuit Court of Appeals, *see Ofori-Tenkorang v. American International Group, Inc.*, 460 F.3d 296 (2006), no other Circuit Court has addressed whether § 1981 applies extraterritorially. Plaintiff urges the Court to reject the reasoning in *Ofori-Tenkorang*. The Court declines to do so and finds that § 1981 does not apply to the facts of this case.

Section 1981 protects "persons *within the jurisdiction of the United States*" from discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981, emphasis added. In *Ofori-Tenkorang*, the Second Circuit concluded that Congress did not extend the statute's coverage beyond the territorial jurisdiction of the United States based on its text and

legislative history.  460 F.3d at 298.  The court compared § 1981 to Title VII and the ADEA, which Congress expressly amended to extend coverage to United States citizens employed in a foreign country in response to court decisions finding that the statutes did not apply extraterritorially.  No such amendment was enacted with respect to § 1981.  *See id.* at 298 n.2 (citing 42 U.S.C. §§ 2000e(f), 12111(4) and 29 U.S.C. § 630(f)).  The Second Circuit further relied on the "'legal presumption that Congress ordinarily intends its statutes to have domestic, not extraterritorial, application.'"  *Id.* at 301 (quoting *Small v. United States*, 544 U.S. 385, 388-89 (2005)).  Thus, "absent clear evidence of congressional intent to apply a statute beyond our borders," the court reasoned, "the statute will apply only to the territorial United States."  *Id.* (internal quotation marks and citation omitted).

The Second Circuit therefore concluded in *Ofori-Tenkorang* that coverage under § 1981 is restricted to conduct taking place in the United States or its territories and "persons within the jurisdiction of the United States."  *Id.* at 302. As such, the court affirmed the district court's dismissal of the plaintiff's claims alleging discriminatory conduct by individuals within the United States while Plaintiff was living in South Africa.  460 F.3d at 304-05.  The Second Circuit held: "Section 1981's territorial limitation is defined by the location of the subject of the discrimination, not by the location of the decisionmaker."  *Id.* at 304.

Plaintiff contends that no other Circuit Court has addressed the territorial

reach of § 1981; but, in fact, the Sixth Circuit has—albeit in an unpublished

decision—and came to the same conclusion as the Second Circuit. *See Rodriques*

*v. Martin Marietta Corp.*, No. 86-3403, 1987 WL 44766, at *2 (6th Cir. Sept. 16,

1987) (concluding that the plaintiff could not claim protection under § 1981

because he was not within the jurisdiction of the United States at the time of the

alleged discrimination). Moreover, numerous district courts have reached the same

conclusion. *See Ofori-Tenkorang*, 460 F.3d. at 302 (citing cases); *see also Gulaid*

*v. CH2M Hill, Inc.*, No. 15-cv-04824, 2016 WL 5673144, at *5-6 (N.D. Calif. Oct.

3, 2016) (unpublished) (citing additional cases); *Harmon v. Dyncorp Int'l, Inc.*,

No. 1:13cv1597, 2015 WL 518594, at *11 (E.D. Va. Feb. 6, 2015) (unpublished);

*Bell v. Honeywell Tech. Sol., Inc.*, No. 1:09-cv-1370, 2010 WL 3211045, at *2

(S.D. Ind. Aug. 12, 2010) (unpublished). The only discriminatory conduct Plaintiff

has alleged in his Complaint and briefs (*see* Pl.'s Resp. Br. at 6, ECF No. 14 at Pg

ID 137) occurred while he was outside the jurisdiction of the United States.

The Court concludes that § 1981 does not extend to such conduct and is

therefore granting GM's motion to dismiss Plaintiff's § 1981 claim (Count III).

### D.    ELCRA

Relying on the Sixth Circuit's unpublished decision in *Ausel v. Unisys*

*Corporation*, No. 96-2062, 1997 WL 720427 (1997), GM argues that the ELCRA

also does not apply extraterritorially. Relying on *Severine v. Ford Aerospace and Communications Corp.*, 325 N.W.2d 572 (Mich. Ct. App. 1982), the *Ausel* court concluded that the ELCRA did not apply to the defendant's decision to replace the plaintiff with a younger female employee and move him from a position in New Jersey to a position in Pennsylvania. However, as Plaintiff correctly points out, *Severine* is no longer good law.

The *Severine* court applied the traditional rule of lex loci delicti meaning that the locus of the tortious act determines the rules of decision for the court. *Id.* at 576. Subsequently, however, in *Sutherland v. Kennington Truck Service, Ltd.*, 562 N.W.2d 466 (Mich. 1977), the Michigan Supreme Court made clear that it no longer follows the traditional rule. Rather, the Court adopted a modified law-of-the-forum approach, described as follows:

> [W]e will apply Michigan law unless a "rational reason" to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Id.* at 471. (citation omitted).

GM has not suggested that any state has an overriding interest in having its law apply in this case. Plaintiff claims that GM controlled GMCIC and

17

consequently played a role in the decision to terminate Plaintiff for prohibited reasons. Moreover, Plaintiff claims that GM, from its Michigan headquarters, refused to hire or transfer him to a position in the United States after the termination of his job in China. GM provides no reason to not apply Michigan law.[5]

### E. "Foreign Law" Exception in Title VII and the ADEA

GM contends that Title VII and the ADEA are in conflict with the law of the People's Republic of China ("PRC"), specifically PRC law providing that male employees shall be retired at sixty years of age. Relying on the "foreign law" provisions in Title VII and the ADEA, GM argues that Plaintiff's unlawful termination claims under those statutes therefore must be dismissed.

When Congress amended Title VII and the ADEA to expand their scope to employees working overseas for United States corporations or corporations controlled by United States entities, it also added a "foreign law" exception to those statutes. The exception insulates employers from liability for "practices involve[ing] an employee in a workplace in a foreign country" where compliance with the ADEA or Title VII "would cause [the] employer, or a corporation controlled by such employer, to violate the laws of the country in which such

---

[5] GM does not argue that the ELCRA limits its territorial reach. In fact, unlike § 1981, the ELCRA does not include restricting language.

workplace is located."  29 U.S.C. § 623(f)(1); *see also* 42 U.S.C. § 2000e-1(b).

GM bears the burden of showing that the exception applies here.  *See Fair Hous.*

*Advocates, Ass'n, Inc. v. City of Richmond Heights, Ohio*, 209 F.3d 626, 634 (6th

Cir. 2000) (quoting *Rogers v. Windmill Pointe Vill. Club Ass'n, Inc.*, 967 F.2d 525,

527 (11th Cir. 1992) ("Under general principles of statutory construction, one who

claims the benefit of an exception from the prohibition of a statute has the burden

of proving that his claim comes within the exception."); *see also Mahoney v.*

*RFE/RL, Inc.*, 818 F. Supp. 1, 4 (D.D.C. 1992) (employer claiming foreign law

exception under the ADEA must show that its compliance with the statute would

cause it to violate foreign country's law), *rev'd on other grounds*, 47 F.3d 447

(D.C. Cir. 1995).  Thus, GM must show that it and/or GMCIC would have violated

PRC law by not terminating Plaintiff's employment when he turned sixty.  If not

terminating Plaintiff would have violated PRC law, Plaintiff's Title VII and ADEA

claims are subject to dismissal under the statutes' foreign law provisions.

As indicated above and in the Court's September 20, 2018 decision, the

Federal Rules of Civil Procedure allow courts to consider a broad spectrum of

materials to determine an issue of foreign law, even when ruling on a Rule 12(b)(6)

motion.  Thus, the Court invited the parties in its earlier decision to submit

materials they believe will aid the Court in interpreting PRC law.  Having

reviewed Plaintiff's and GM's submissions the Court cannot conclude at this time

that it would have been a violation of PRC law to allow Plaintiff to continue working in China at GMCIC after he turned sixty.

Article 21 of the Implementation Regulation for the Labor Contract Law of the People's Republic of China provides that an employee's labor contract terminates when the employee reaches the statutory retirement age, which is sixty years of age for male employees. (*See* GM's Mot. Ex. 5(A), ECF No. 11-6 at Pg ID 109; GM's Reply Ex. 1, ECF No. 15-2 at Pg ID 265.) GM presents several decisions in which courts in China held that the employment contracts of the plaintiffs-employees, Chinese nationals, terminated upon their sixtieth birthdays. (*See* GM's Supplement Exs. 2-8, ECF Nos. 24-2 to 24-8.) However, some of the same cases reflect that those individuals were not precluded by PRC law from working for their employer after turning sixty. Instead, the relationship became one of "independent contractor." (*See id.* Exs. 4-8, ECF Nos. 24-4 to 24-8.) One of the articles GM supplied to the Court, *2018 GTDT: Labour and Employment China*, similarly provides that "[e]mployees … are allowed to hire retirees using a labour service contract." (GM's Supp. Ex. 9 at 15, ECF No. 24-9 at Pg ID 762.)

Courts in China appear to reach the same conclusion in cases where the worker-plaintiff is a foreigner, as reflected in another case GM submitted: *Immtsukenji v. Heifei Sanjiing Electronics Co. Ltd.*, Nov. 12, 2014 (Intermediate

People's Court, Hefei City, Anhui Province) (China). [6]  (GM's Suppl. Ex. 14, ECF

No. 24-14.)  In that case, Immtsukenji, a Japanese citizen, signed a contract with

Hefei Sanjiing Electronics Co., Ltd. ("Sanjiing Electronics") on December 1, 2011,

to work in China.  (*Id.* at 2, ECF No. 24-14 at Pg ID 813.)  Sanjiing Electronics

stopped paying Immtsukenji's salary in November 2013 and terminated him on

January 13, 2014.  (*Id.*)  Immtsukenji had turned sixty years old in January 2010,

before he signed the work contract.  (*Id.* at 3, Pg ID 814.)  He filed suit to recover

---

[6] Plaintiff provides materials reflecting that there are no age restrictions for certain foreigners working in China and that specific provinces have extended the retirement age to sixty-five for certain workers.  (*See* Pl.'s Resp. Ex. 18, ECF No. 14-19 at Pg ID 248; Pl.'s Supp. Wang Aff., Ex. D, ECF No. 22-4 at Pg ID 429; *Id.* Ex. E at 8, ECF No. 22-5 at Pg ID 444.)  The Court located articles supporting the same conclusions.  *See, e.g.,* Junlu Jiang and Xiaodan Xu, *Employment and Employee Benefits in China: Overview*, https://content.next.westlaw.com/Document/I0206eb7d1cb611e38578f7ccc38dcbee/View/FullText.html?contextData=(sc.Default)&transitionType=Default&firstPage=true&bhcp=1; *The Employment of "Elderly" Foreigners in China: Service or Employment?,* Lexology, Mar. 9, 2016, https://www.lexology.com/library/detail.aspx?g=26e9fb94-dd83-41c3-ab6b-88a216058081; Huang Yue, *Shanghai to Allow Expats Over 60 to Work*, CRIEnglish.com, Aug. 20, 2016, http://www.chinadaily.com.cn/china/2016-08/21/content_26547297.htm; Alex Linder, *Expats Over 60 Years Old Can Now Work in Shanghai, Just So Long as They are Corporate Execs*, Shanghaiist, May 5, **(Cont'd …)** 2018, http://shanghaiist.com/2016/08/24/shanghai_elderly_foreign_experts. Nevertheless, because GM does not satisfy its burden of showing that PRC law mandated Plaintiff's retirement at age sixty, the Court does not find it necessary to decide at this time whether the statutory retirement age applies to foreigners working in China or if certain provinces in China have extended the retirement age for certain categories of workers.

the salary he was not paid prior to his termination and alleging that he was wrongfully terminated under PRC law.

The lower court found that the contract between the parties was "*not against the law*" but deemed it a "service contract" because Immtsukenji had turned sixty before its execution. (*Id.* at 2-3, Pg ID 813-14, emphasis added.) The lower court stated: "for work-related disputes between the parties, their relationship shall be treated as an independent contractor relationship, which is beyond the coverage of the *Employment Law of the People's Republic of China* or the *Employment Contract law of the People's Republic of China*. (*Id.* at 3, Pg ID 814.) The court concluded that Sanjing Electronics was liable for the salary it failed to pay Immtsukenji, but not damages for unlawful termination of his employment contract. (*Id.*) The Intermediate People's Court affirmed. (*Id.* at 4-5, Pg ID 815-16.)

This decision—as well as many of the other cases submitted to the Court—strongly suggest that it would *not* have been "against [PRC] law" for GM and/or GMCIC to maintain a work relationship with Plaintiff after his sixtieth birthday. Whether that relationship would have been characterized as an employment or independent contractor arrangement under PRC law is of no relevance, as Plaintiff is not seeking here to obtain coverage under the *Employment Law of the People's Republic of China* or the *Employment Contract law of the People's Republic of*

*China*.  In other words, unlike *Immtsukenji*, Plaintiff is not seeking to enforce the termination protections or benefits provided under PRC law.  Instead, he is seeking protection under United States federal and state anti-discrimination laws.  The Court will need to define the working relationship between the parties based on those statutes, not PRC law.[7]

GMCIC's retirement policies and practices further suggest that GM and/or GMCIC would not have violated PRC law by retaining Plaintiff after he turned sixty.  GMCIC's retirement policies, effective April 1, 2000, state: "The company may, at its discretion, continue the employment of an employee on a year-to-year basis up to the age of 65. …"  (Pl.'s Resp., Ex. 7, ECF No. 14-8 at Pg ID 207.)  Plaintiff indicates that GMCIC in fact retained another employee to work in China until age 65.  (Pl.'s Aff. 19, ECF No. 14-3 at Pg ID 178.)  Further, in response to Plaintiff's EEOC charge, GM wrote: "on the rare occasion that business needs require GMCIC to utilize the services of a former employee, then it enters into a year-to-year service provider contract (i.e., an independent contractor agreement) for those services."  (Pl.'s Resp. Ex. 13 at 2, ECF No. 14-4 at Pg ID 228.)

In short, GM has not shown that GM and/or GMCIC would have violated PRC law if Plaintiff was retained beyond his sixtieth birthday.  Therefore, the

---

[7] As such, the Court need not determine, at least at this time, whether the terms "independent contractor" and "employee" have the same meaning under United States and PRC law.

Court concludes that the "foreign law" exception in Title VII and the ADEA do not

mandate dismissal of Plaintiff's claims under those statutes.

## IV.    GM's Forum Non Conveniens Argument

"Under the common law doctrine of forum non conveniens, a district court

may decline to exercise its jurisdiction, even though the court has jurisdiction and

venue." *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016)

(internal quotation marks and citation omitted).  Nevertheless, the Sixth Circuit has

advised courts to sparingly apply the doctrine to dismiss a case:

> Given the "virtually unflagging obligation … to exercise the
> jurisdiction given them," *Colo. River Water Conservation Dist. v.
> United States*, 424 U.S. 800, 817 … (1976), *forum non conveniens*
> should be invoked only in "rather rare cases[,]" *Gulf Oil Corp. v.
> Gilbert*, 330 U.S. 501, 509 … (1947))."

*Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 618

(6th Cir. 2018).

Under Sixth Circuit precedent, a court must conduct a three-step analysis to

decide whether dismissal is appropriate under the forum non conveniens doctrine.

*See, e.g., Hefferan*, 828 F.3d at 492 (internal quotation marks and citations

omitted).  First, the court "determines the degree of deference owed the plaintiff's

forum choice."  *Id*. (citation omitted).  The defendant then must establish that there

is an adequate alternative forum and that the plaintiff's selected "forum is

unnecessarily burdensome based on public and private interests." *Id*. (citations omitted).

As to the first consideration, "[w]hen a domestic plaintiff initiates a suit in his home forum, that choice is normally entitled great deference because it is presumptively convenient for the plaintiff." *Id*. at 493 (citing *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523-24 (6th Cir. 2010)). Nevertheless, "[t]he degree of deference owed a plaintiff's forum choice will inevitably vary with circumstances, even among plaintiffs who claim the United States as home." *Id.* at 494. "[T]he greater the plaintiff's connection to the United States 'and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*.'" *Id*. (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc)).

Plaintiff, a United States citizen since 1999, lived in the United States from 1991 until 2009, when he transferred to a job assignment in China. (Pl.'s Aff. ¶¶ 4, 6-7, ECF No. 14-3 at Pg ID 175-76.) Plaintiff returned to the United States after his termination from that position in July 2017. (*Id.* ¶¶ 32, 33, Pg ID 181.) He moved back to his home in Clarkston, Michigan, where he currently resides. (*Id.* ¶ 33, Pg ID 181; Compl. ¶ 1, ECF No. 1 at Pg ID 2.) Under these circumstances, the general rule is that dismissal for forum non conveniens is proper "only when

the defendant establishes such oppressiveness and vexation to a defendant as to be out of all proportion to [the] plaintiff's convenience." *Duha v. Agrium, Inc.*, 448 F.3d 867, 874 (6th Cir. 2006).

Turning to the second step, the court must decide whether Plaintiff's claims "'can be heard in an available and adequate alternative forum.'" *DRFP, LLC v. Republica Bolivariana de Venez*, 622 F.3d 513, 518 (6th Cir. 2010) (quoting *Duha*, 448 F.3d at 873). "[I]dentifying an alternate forum is a prerequisite for dismissal, not a factor to be balanced. If there is no suitable alternate forum where the case can proceed, the entire inquiry ends." *Associação Brasileira de Medicina de Grupo*, 891 F.3d at 620 (citing *Gulf Oil*, 330 U.S. at 506-07; *Watson v. Merrell Dow Pharm., Inc.*, 769 F.2d 354, 357 (6th Cir. 1985)). To be "available," an alternative forum must be able to exercise jurisdiction over all of the parties to the lawsuit. *See id.* (citations omitted). An alternative forum is only "adequate" if it permits litigation of the subject matter of the dispute. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); *see also DRFP*, 622 F.3d at 519. "Less favorable law in the alternative forum will not, on its own, make the forum inadequate." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 831 (6th Cir. 2009).

GM asserts that China is the appropriate forum in which to litigate Plaintiff's dispute. GM says little about the availability and adequacy of this alternative forum to litigate Plaintiff's claims, however. The extent of GM's argument is that

"Chinese courts can and do apply foreign law, and courts deem China to be 'an available and adequate forum.'" (GM's Br. in Supp. of Mot. at 23, ECF No. 11 at Pg ID 71, quoting *2002 Irrevocable Tr. for Richard C. Hvizdak v. Huntington Nat'l Bank*, No. 208-cv-556, 2008 WL 5110778, at *8 (M.D. Fla. Dec. 1, 2008) (unpublished).) As such, GM says nothing about whether it would be amenable to process in China. GM argues in its motion that it is a distinct entity from GMCIC, and the Court presumes it would make the same argument to avoid being sued in China. But even if GM is amenable to process in China, it fails to demonstrate that China is an adequate forum to try Plaintiff's claims.

The cases GM cites in which courts found China to be an adequate forum (*see* GM's Br. in Supp. of Mot. at 23 & n.21, ECF No. 11 at Pg ID 71) did not involve discrimination claims. Plaintiff could not bring his discrimination claims under United States and Michigan statutes in a PRC court. *See* 42 U.S.C. § 2000e-5(f)(3); 29 U.S.C. § 216; Mich. Comp. Laws § 37.2801. Thus, it is irrelevant that "Chinese courts can and do apply foreign law[.]" (*Id.* at 23, Pg ID 71.) If he filed a lawsuit in China, Plaintiff would need to rely on PRC law to seek a remedy and GM makes no showing that China "permit[s] litigation of the subject matter of th[is] dispute." *Piper Aircraft*, 454 U.S. at 254 n.22. As such, GM has not satisfied its burden of showing that an adequate alternative forum exists. If there is no adequate alternative forum, the Court's forum non conveniens inquiry ends.

*See Piper Aircraft*, 454 U.S. 254 n. 22 ("At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum."); *see also Associação Brasileira de Medicina de Grupo*, *supra*.

The Court therefore rejects GM's request to dismiss Plaintiff's Complaint under the forum non conveniens doctrine.

## V.    Conclusion

For the reasons above, the Court finds that Plaintiff, if allowed to amend his Complaint, could plead sufficient facts to raise a plausible claim that GM controls GMCIC and that GM failed to transfer or rehire him for discriminatory reasons. The facts of this case, however, do not support a plausible claim under § 1981 because the alleged discriminatory acts occurred while Plaintiff was outside the jurisdiction of the United States.

Title VII, the ADEA, and the ELCRA apply extraterritorially.  GM fails to demonstrate that Plaintiff's Title VII or ADEA claims are subject to dismissal under those statutes' foreign law provisions.

Finally, GM has not satisfied its burden of showing that China provides an alternative adequate forum to Plaintiff's chosen forum in which to litigate his claims.

Accordingly,

**IT IS ORDERED** that GM's motion to dismiss (ECF No. 11) is

**GRANTED IN PART AND DENIED IN PART** in that Count III of Plaintiff's

Complaint, only, is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiff shall file an amended

complaint reflecting this decision within fourteen (14) days of this Opinion and

Order.

s/Linda V. Parker
LINDA V. PARKER
UNITED STATES DISTRICT JUDGE

Dated: March 5, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of
record and/or pro se parties on this date, March 5, 2019, by electronic and/or U.S.
First Class mail.

s/R. Loury
Case Manager